IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

DESTNEY WILLIAMS,

    Plaintiff,

  vs.          Case No. 22-3058-SAC

HARTPENCE DALTON, MEGHAN
DAVIS, ERICA MARSHAL, HOLLY
CHAVEZ, DONA HOOK, and
GLORIA GEITHER,

    Defendants.

MEMORANDUM AND ORDER

  The plaintiff Destney Williams ("Williams") has filed a civil rights complaint pursuant to 42 U.S.C. § 1983 using the required court-provided forms. ECF# 1. Williams currently resides at Topeka Correctional Facility ("TCF"). As set out in the complaint's nature of case, Williams alleges that in retaliation for filing a grievance she was removed from private industry jobs, transferred to another dorm where she contracted COVID and was exposed to an inmate who attacked her, and denied shift changes in a second private industry job that resulted in another inmate attacking her. Williams seeks as relief only to be compensated for the lost wages from the date she lost job her private industry at Koch Inc. on October 20, 2020, through her release from TCF or her receipt of a job with equal wages or more.

  The plaintiff has filed a motion to appoint counsel. ECF# 2. There is no constitutional right to the appointment of counsel in a civil matter. *Carper v. Deland*, 54 F.3d 613, 616 (10th Cir. 1995). The decision whether to appoint counsel in a civil action remains in the district court's discretion. *Williams v. Meese*, 926 F.2d 994, 996

1

(10th Cir. 1991). The party asking for counsel to be appointed must persuade the court that the claims presented have sufficient merit to warrant the appointment of counsel. *Steffey v. Orman*, 461 F.3d 1218, 1223 (10th Cir. 2016). It is not enough "that having counsel appointed would have assisted [the movant] in presenting his strongest possible case, [as] the same could be said in any case." *Steffey*, 461 F.3d at 1223 (citation omitted). Thus, the district court should consider "the merits of the prisoner's claims, the nature and complexity of the factual and legal issues, and the prisoner's ability to investigate the facts and present his claims." *Rucks v. Boergermann*, 57 F.3d 978, 979 (10th Cir. 1995). After reviewing the record, the court finds the appointment of counsel here is not warranted, as the plaintiff's claims lack sufficient merit and are not unusually complicated. The motion for appointment of counsel is denied.

When the plaintiff filed her complaint on April 1, 2022, she neither paid the filing fee nor submitted a motion to proceed in forma pauperis (IFP). On the same day, the Court issued a notice of deficiency informing Plaintiff that she was required to correct this deficiency by May 2, 2022. ECF# 3. The notice advised Plaintiff that if she failed to do so, this action may be dismissed without further notice. On April 11, 2022, the plaintiff filed a response saying she had emailed the TCF's business office requesting that it process her payment of the filing fee and provide copies of her account summary for the last six months. ECF# 4. As of her filing, the plaintiff said she has not received any responses from the business office. *Id*. The plaintiff next filed on April 17, 2022, her motion to proceed ifp. ECF# 5. Her motion is deficient for not answering all matters under question one and for not attaching a transactional

ledger sheet of her institutional account. She does attach her inmate request to staff dated April 1, 2022, in which she asked for processing of her "$402.00 for my civil case" and a printout of her account. ECF# 5-1. Staff answered her request indicating the business office was "short staffed" but should complete her request "soon." *Id*. If the plaintiff does not respond by May 2, 2022, with either the filing fee or inmate account statements, the court shall communicate with the facility and extend the plaintiff's deadline.

**Statutory Screening of Prisoner Complaints**

A court must screen prisoners' complaints which seek relief against a governmental entity or an officer or an employee of a governmental entity. 28 U.S.C. § 1915A(a). The screening court must dismiss the entire complaint or any part of it that, "is frivolous, malicious, or fails to state a claim upon which relief can be granted; or . . . seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b).

A court liberally construes a pro se complaint and applies "less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). In addition, the court accepts all well-pleaded allegations in the complaint as true. *Anderson v. Blake*, 469 F.3d 910, 913 (10th Cir. 2006). On the other hand, "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief," dismissal is appropriate. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 558 (2007).

The same standard used for Fed. R. Civ. P. 12(b)(6) motions is used for § 1915 dismissals, and this includes the newer language and meaning taken from

*Twombly* and its "plausibility" determination. *See Kay v. Bemis*, 500 F.3d 1214, 1218 (10th Cir. 2007) (citations omitted); *see also Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009), *cert. denied*, 558 U.S. 1148 (2010). As a result, courts "look to the specific allegations in the complaint to determine whether they plausibly support a legal claim for relief." *Kay*, 500 F.3d at 1218 (citation omitted). Under this new standard, "a plaintiff must 'nudge his claims across the line from conceivable to plausible.'" *Smith*, 561 F.3d at 1098 (citation omitted). The Tenth Circuit has made clear, "that, to state a claim in federal court, a complaint must explain what each defendant did to [the pro se plaintiff]; when the defendant did it; how the defendant's action harmed [the plaintiff]; and what specific legal right the plaintiff believes the defendant violated." *Nasious v. Two Unknown B.I.C.E. Agents*, 492 F.3d 1158, 1163 (10th Cir. 2007). The court "will not supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on a plaintiff's behalf." *Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (citation omitted).

**Complaint**

The plaintiff has filled out a form civil rights complaint for an action pursuant to 42 U.S.C. § 1983. She alleges three counts for relief. Count one refers to her dorm transfers on October 22nd and November 20th of 2020 and mentions TCF classifications administrator, Meghan Davis, as the only named defendant. She alleges having contracted COVID after her November transfer. Count one also lists "negligence, deliberate indifference, general orders 14-103 offender rights, 15-101A

Private Industry Non prison, [and] Deprivation of character slander" as her apparent legal theories for relief ECF# 1, p. 4.

For count two, she alleges filing a grievance on October 21, 2020, and then being removed from the G-Dorm and being told on 23, 2020, by Deputy Warden Kevin Keith that he had removed her from the Koch Inc. job "for hearsay." *Id.* Deputy Warden Keith is not named as a defendant in this lawsuit. She further alleges that on the evening of October 22, 2020, Lt. Thompson told the plaintiff that she was going to be placed in maximum custody, but Officer Stinsocker explained to Thompson that the plaintiff had never left her room. Neither Thompson nor Stinsocker are named as defendants in her complaint. There is no allegation that the plaintiff was ever moved to maximum custody as had been threatened. For this count, the plaintiff lists these legal theories, "Harassment (violation of the 14th Amendment), General Orders 14-103 offender rights, 1st Amendment." *Id.*

For count three, the plaintiff alleges that on June 11 and 22, 2021, she wrote her counselor and warden asking that her private industry job shift be changed. Warden Gloria Geither wrote back that she did not switch shifts for inmates. On August 5, 2021, the plaintiff was attacked by an inmate. The warden switched shifts for others on September 1, 2021. Count three lists the following, "Discrimination (violation of the 14th Amendment), General Orders (14-103) offender rights, (15-101A) Work release and non Prison Based private Industry."

Along with the completed § 1983 complaint form summarized above, the plaintiff submits 121 pages of her handwritten notes and copies of various grievances. Her complaint does not refer to these additional pages. More importantly, these

additional pages are not organized according to her three pleaded claims for relief. Consequently, the court finds that these additional pages do not meet the requirements of Fed. R. Civ. P. 8(a), as they do not offer a short and plain statement of the plaintiff's claims showing her entitlement to relief. "[P]ro se parties [must] follow the same rules of procedure that govern other litigants." *Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 840 (10th Cir. 2005) (internal quotation marks). These additional pages, however, do address each named defendant with theories of recovery and some factual allegations. As part of its screening responsibility, the court has reviewed and here summarizes the contents. In doing so, the court is not assuming any duty to supply factual allegations otherwise lacking or to state new or different legal theories. Nor is the court taking "on the responsibility of serving as the litigant's attorney in constructing arguments and searching the record." *Id.*

Against Unit Team Manager ("UTM") Hartpence Dalton, the plaintiff's notes summarily refer to First Amendment retaliation in response to her filing of grievances and Fourteenth Amendment equal protection and discrimination violations. She alleges that UTM Dalton moved her from G-Dorm on October 22, 2020, in retaliation for filing a grievance. She alleges her G-Dorm counselor told her the same day that the administration was moving her to A-Dorm because she "had too much power that inmates were complaining." ECF# 1-1, p. 4. The plaintiff further alleges that Dalton told her the move was because "I looked intimidating and that I was affecting the work environment but women who got DRs [disciplinary reports] were allowed to continue to get DRs and keep their jobs I also spoke to Hartpence in

advance and explained to him that they were trying to get me fired . . . [because I'm]

Black Oct-16-10 3:30 pm." ECF# 1-1, p. 108. The plaintiff also alleges she was

removed from her private industry job with Koch Inc. on October 20, 2020, by UTM

Hartpence Dalton "for hearsay" because she "looked intimidating and  . . . was

affecting work progress due to the way" she looked when, in fact, she had no DRs or a

prior violent history. ECF# 1-1, p. 4. The plaintiff filed three grievances on October

21, 2020, one with the job coordinator Erica Marshall and two with the Warden Gloria

Geither, about her removal from the Koch Inc. job saying she was not pleased with

the decision and asking why she did not "receive a chance" like others did. ECF# 1-1,

pp. 52-54.

   Against Classifications Administrator ("CA") Meghan Davis, the plaintiff

alleges CA Davis violated her Eighth Amendment rights in moving her to a different

dorm during COVID protocols and was negligent in placing her in a four-person room

where she was attacked by "a high-risk mental health inmate." ECF# 1-1, p. 1. On

November 20, 2020, she was moved to B-Dorm and a four-person room. One of the

inmates assigned to this room had mental health issues and "attacked" the plaintiff

"everyday." *Id.* at p. 4. The plaintiff complained of the conditions, but CA Davis did

nothing. The plaintiff contracted COVID after her placement in the B-Dorm. On June

11, 2021, the plaintiff spoke with Davis about being uncomfortable with certain

inmates. ECF# 1-1, p. 108. Davis later put the plaintiff on a bus with violent

offenders, and the plaintiff was attacked on August 5, 2021. CA Davis is alleged to

have allowed this inmate who attacked the plaintiff to return to her job in January of

2022.

Against Job Bank Coordinator ("JBC") Erica Marshall, the plaintiff alleges JBC Marshall violated her rights under the First and Fourteenth Amendments by denying her equal opportunities in the job programs due to discrimination and in retaliation for exercising her First Amendment rights. ECF# 1-1, pp. 1, 106. The plaintiff alleges she was removed from a private industry job "for hearsay," while JBC Marshall allowed other inmates with DRs to keep their jobs and other inmates who had been fired to return to their jobs. *Id.* at p. 108. JBC Marshall also is alleged to have denied plaintiff an application or interview for a position fitting her criteria on January 6, 2021. *Id.* at pp. 5, 108. The plaintiff also alleges that JBC Marshall falsely stated that Russell Stover fired her. *Id.* at p. 108. The plaintiff attaches a grievance dated February 10, 2022, to JBC Marshall complaining that other inmates who were removed from private industry jobs have been allowed back, but that she has not been allowed back because of discrimination and retaliation. Marshall's response recounted that the plaintiff has had three opportunities for private industry employment and that she was "removed from all of them due to incompatibility with peers and supervisors according to . . . records." ECF# 1-1, p. 47. "Both Koch and Russell Stover asked for you to be removed that is why you can't return; they won't rehire you." *Id.*

Against Grievance Coordinator ("GC") Holly Chavez, the plaintiff alleges GC Chavez violated her rights under First and Fourteenth Amendments by denying her equal opportunity in the prison program due to discrimination and in retaliation for exercising First Amendment rights. She also lists without supporting allegations, "negligence, abuse of power and prison policy, and deliberate indifference." *Id.* at p.

106. The plaintiff's handwritten notes include the following allegations. On January 26, 2021, "they placed phoenix as the property clerk," and GC Chavez said in a grievance that there was no proof of the plaintiff complaining in advance of her grievance. *Id.* at p. 109. On August 25, 2021, GC Chavez said the plaintiff would be considered only for jobs inside the facility despite her minimum custody status and despite her "DR history does not support their allegations or Russell Stover's." *Id.* On September 8, 2021, GC Chavez allowed inmate Phoenix to touch and pack the plaintiff's property when the plaintiff was not present. On September 10, 2021, the plaintiff filed a grievance about Phoenix having this position of power. Finally, the inmate Pam Pittman who attacked the plaintiff was allowed to return to private employment on January 14, 2022. The plaintiff attaches a grievance dated August 10, 2021, in which she complains about Pam Pittman's attack on the bus on August 5, 2021. The grievance response from Chavez states that she checked into the incident finding out there were issues at the factory and on the bus. "We cannot have both of you and I was also informed that you refused to lockdown and that behavior coupled with behavior while at work and on the bus led to removal." ECF# 1-1, p. 11. The plaintiff also provides a formal interdepartmental memorandum signed by GC Chavez addressing the plaintiff's termination from Russell Stover:

> I have received and reviewed your grievance. You are stating that you were removed from Russell Stover employment, and you believe that you did not violate any rules or regulations that warranted the removal from your job. On 8/5/21 there was a report that there was a fight on the bus between you and another resident. Upon a further look into the situation and further discussion with Russell Stover, the bus driver and other staff it was determined that your attitude at work with fellow residents and civilian staff as well as your behavior on the bus and at the facility, you were removed from your employment on 8/9/21.

> Based on recent discussion with Russell Stover, you will not be awarded your employment back with them on any shift or at any plant. Regarding future employment at TCF, you will be considered for jobs at the facility. Please get with your UTM and make your job preferences known so that the Job Bank Coordinator can place you appropriately as jobs become available.

ECF# 1-1, p. 83. Warden Geither reviewed this grievance and concluded:

> Your employment was terminated from Russell Stover's on 8/9/21 and on that date it was determined by TCF that you would not be returning to that job placement due to behavior and attitude. You stated in your grievance response that you asked via form 9 to be moved to a different shift at Russell Stover, however, there are no form 9's attached to this grievance response to support your statement. After looking into your employment history, it was noted that you fired from KOCH Industries in 2020, so your history with private industry employment has not worked out the last two times. TCF Job Bank Coordinator will appropriately place you in employment within the facility from now until your release.

ECF# 1-1, p. 85.

Against Major Dona Hook, the plaintiff alleges that Major Hook denied her equal opportunity in prison programs in violation of her Fourteenth Amendment rights and in retaliation for exercising her First Amendment rights. On October 22, 2020, Major Hook sent a Lt. Thompson to enforce a complaint when the plaintiff had never left her room. On November 19, 2020, the plaintiff learned that A-Dorm officers were receiving emails from administration asking if the plaintiff was threatening people. On August 9, 2021, Major Hook denied yard time to the plaintiff, yelled at her, said she would not have a job because she went to yard time, and confined the plaintiff to her room. On September 3, 2021, Major Hook told the plaintiff that if her family called Russell Stover then the Major was "going to get me for harassment." ECF# 1-1, p. 109.

Against Warden Gloria Geither, the plaintiff alleges Warden Geither's provision of prison programs violated her Fourteenth Amendment rights and retaliated

for her exercise of First Amendment rights. She summarily alleges an Eighth Amendment violation, negligence, failure to act during COVID protocols, abuse of prison policy, and deliberate indifference. ECF# 1-1, pp. 1 and 106. As for any personal participation by Warden Geither, the plaintiff's notes allege the warden denied her request for a shift change made on June 22, 2021, but granted shift changes for other inmates in August of 2021. The plaintiff's additional pages include grievance responses signed by Warden Geither, but they do not include allegations showing her direct personal involvement in any of the adverse actions.

For relief, the plaintiff requests only monetary compensation in the amount of "$112 a day starting October 20, 2020," continuing through her release or her receipt of another job "of equal value or more." ECF# 1, p. 6. The plaintiff seeks relief only for the loss of her private industry job with Koch Inc. and the denial of other employment opportunities to earn comparable or better wages. She does not seek relief for dorm transfers or other alleged wrongdoings.

On April 17, 2022, the plaintiff submitted a supplement which contains some pages that duplicate her earlier filings but also some pages of new grievances over the favorable treatment given to inmate Phoenix, over harassment from First Sergeant Bignam in watching and singling her out, over TCF's continued use of a COVID schedule, and over some other matters related to her efforts to comply with the requirements for filing this action ifp. ECF# 6. These new pages are not presented as additional allegations made in furtherance of a claim for relief. As already stated, it is not this court's duty to serve as the litigant's attorney in supplying allegations or fashioning legal theories in support of claims for relief.

Even with these supplemental pages, the plaintiff has failed to allege which constitutional rights are involved, how and when they were violated, and who participated in the violation. The filed complaint is subject to dismissal for the following reasons.

**42 U.S.C. § 1983**

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988) (citations omitted). For a § 1983 claim, the analysis begins by identifying the specific constitutional right allegedly infringed. *Graham v. Connor*, 490 U.S. 386, 393-94 (1989). The validity of the claim then must be judged by reference to the specific constitutional standard which governs that right. *Id*. As the Supreme Court said back in 1987:

> Prison walls do not form a barrier separating prison inmates from the protections of the Constitution. Hence, for example, prisoners retain the constitutional right to petition the government for the redress of grievances, *Johnson v. Avery*, 393 U.S. 483, 89 S.Ct. 747, 21 L.Ed.2d 718 (1969); they are protected against invidious racial discrimination by the Equal Protection Clause of the Fourteenth Amendment, *Lee v. Washington*, 390 U.S. 333, 88 S.Ct. 994, 19 L.Ed.2d 1212 (1968); and they enjoy the protections of due process, *Wolff v. McDonnell*, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974); *Haines v. Kerner*, 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972). Because prisoners retain these rights, "[w]hen a prison regulation or practice offends a fundamental constitutional guarantee, federal courts will discharge their duty to protect constitutional rights." *Procunier v. Martinez*, 416 U.S., at 405–406, 94 S.Ct., at 1807–08.

*Turner v. Safley*, 482 U.S. 78, 84 (1987).

A viable § 1983 claim must show how each named defendant caused a violation of the plaintiff's constitutional rights. *Walker v. Mohiuddin*, 947 F.3d 1244,

1249 (10th Cir. 2020). "[A] complaint must make clear exactly who is alleged to have done what to whom." *Robbins v. State of Oklahoma*, 519 F.3d 1242, 1250 (10th Cir. 2008). Conclusory allegations of involvement are insufficient. *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009). The Tenth Circuit has stated in various cases that an absence of specificity may bar a complaint from stating a plausible claim. In *Gee v. Pacheco*, 627 F.3d 1178, 1185 (10th Cir. 2010), the court remarked that "a prisoner claim will often not be plausible unless it recites facts that might well be unnecessary in other contexts." In *Khalik v. United Air Lines*, 671 F.3d 1188, 1194 (10th Cir. 2012), the Tenth Circuit held that a discrimination claim could not move forward merely upon the claim that a person belonged to a racial or ethnic minority and suffered an adverse employment action. Also, the Tenth Circuit has warned that where, as here, the plaintiff names several individuals as defendants, "the complaint [must] make clear exactly who is alleged to have done what to whom, to provide each individual with fair notice as to the basis of the claims against him or her." *Robbins v. State of Oklahoma,* 519 F.3d at 1250. Further, the complaint must also demonstrate personal involvement on the part of each named defendant. *See Grimsley v. MacKay*, 93 F.3d 676, 680 (10th Cir. 1996)

There is no respondeat superior liability under § 1983. *Ashcroft*, 556 U.S. at 676 ("Because vicarious liability is inapplicable to *Bivens* and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the officials' own individual actions, has violated the Constitution."). Thus, the plaintiff must name each defendant in the caption and in the body of the complaint, and there describe the personal unconstitutional actions allegedly done by each defendant with "dates,

locations, and circumstances." *Lynn v. Willnauer*, 2021 WL 1390384, at *10 (D. Kan. Apr. 13, 2021). "[T]he Tenth Circuit recognizes that non-supervisory defendants may be liable if they knew or reasonably should have known that their conduct would lead to the deprivation of a plaintiff's constitutional rights by others, and an unforeseeable intervening act has not terminated their liability." *Fudge v. Martinez*, 504 F.Supp.3d 1215, 1221 (D.N.M. 2020) (citing *See Martinez v. Carson*, 697 F.3d 1252, 1255 (10th Cir. 2012); *Trask v. Franco*, 446 F.3d 1036, 1046 (10th Cir. 2006)). Mere supervisory status, however, is insufficient to create personal liability. *Duffield v. Jackson*, 545 F.3d 1234, 1239 (10th Cir. 2008).

The plaintiff's completed form complaint is wholly deficient in meeting these § 1983 pleading requirements. While alleging the denial of equal private industry job opportunities and the transfer to different dorms and rooms, she refers to rights under the First, Eighth and Fourteenth Amendments mostly in a summary and conclusory fashion without asserting who did what and when to violate any specific constitutional rights. She also alleges retaliation for filing grievances but without connecting when those grievances were filed to when the adverse actions occurred and without alleging whether the person(s) involved with the adverse actions even knew about her filing of that grievance. In short, the plaintiff's current complaint fails to state a claim for relief.

**Fourteenth Amendment—Due Process**

The plaintiff repeatedly alleges she was removed from her private industry jobs at Koch Inc. and Russell Stover and not allowed to be rehired despite the lack of any serious DRs. To the extent the plaintiff is claiming any termination or

denial of rehiring violated her right to due process in not being allowed to present or defend her position; such a claim is subject to dismissal. *See Milligan v. Archuleta*, 659 F.3d 1294, 1295–96 (10th Cir. 2011) (finding that the inmate plaintiff "does not have a constitutional right to employment" which precludes a due process claim). Prisoners do not have a protected interest in prison employment. *Anderson v. Cunningham*, 319 Fed. Appx. 706, 710 (10th Cir. 2009) (citing *Penrod v. Zavaras*, 94 F.3d 1399, 1407 (10th Cir. 1996) (holding that a prisoner does not have a protected liberty interest in his prison job)), *cert. denied*, 558 U.S. 832 (2009); see also *Jenner v. McDaniel*, 123 Fed. Appx. 900, 905 (10th Cir. 2005) (finding plaintiff "does not have a constitutional right to a particular prison job"). Any due process claim stemming from termination and failure to rehire is subject to dismissal.

**Fourteenth Amendment—Equal Protection**

It is settled law in this Circuit "that prison officials cannot discriminate against an inmate based upon his race in granting or withholding privileges and that such discrimination constitutes a violation of an inmate's right to equal protection." *Gray v. Bruce*, 26 Fed. Appx. 819, 824 (10th Cir. 2001) (citing *Williams v. Meese*, 926 F.2d 994, 998 (10th Cir.1991)). The plaintiff's allegations of racial discrimination here, however, are fatally deficient. "Conclusory allegations simply do not state a cause of action for which relief can be granted under an equal protection theory." *Brown v. Zavaras*, 63 F.3d 967, 972 (10th Cir.1995). To allege an equal protection claim, the plaintiff must allege facts that a named defendant treated her "differently than other similarly situated inmates." *Requena v. Roberts*, 893 F.3d 1195, 1210 (10th Cir. 2018), *cert. denied*, 139 S. Ct. 800 (2019). To be similarly situated, the

individuals must be "alike 'in all relevant respects.'" *Id.* (quoting *Coal.for Equal Rights, Inc. v. Ritter*, 517 F.3d 1195, 1199 (10th Cir. 2008)). "[T]o state a race-based equal protection claim, 'a plaintiff must sufficiently allege that defendants were motivated by racial animus.'" *Id.* (quoting *Phelps v. Wichita Eagle-Beacon*, 886 F.2d 1262, 1269 (10th Cir. 1989)).

It is not enough for the plaintiff to allege she was terminated from Koch Inc. or transferred to a different dorm because she "looked intimidating" and "was affecting the work environment" while other inmates with DRs were allowed to keep their jobs or not transferred. These allegations are too vague and conclusory to state an equal protection claim. Nor do they assert that race was involved, that other inmates were alike the plaintiff in all relevant aspects, and that the defendants deciding to terminate her employment or to transfer her were motivated by racial animus. For that matter, the general allegation that she was denied equal opportunities in job programs fails to state a claim for relief. There are no assertions that the defendants in denying the plaintiff more private job opportunities or in transferring her to a different room did so with a discriminatory purpose or intent. The plaintiff's allegations are devoid of any facts showing any of the defendants intentionally discriminated against her because of her race. She does not allege any circumstances in the administrative decisions and actions that sustain an inference of a discriminatory motive. The court will provide the plaintiff with an opportunity to submit additional factual allegations to support her denial of equal protection claim.

**Eighth Amendment**

The plaintiff alleges that CA Davis transferred her to a different dorm during strict COVID protocols which resulted in her contracting COVID. She asserts the transfer from a two-person room to a four-person room was against her request and exposed her to attacks by a high-risk inmate. The plaintiff also summarily asserts an Eighth Amendment violation against Warden Geither without alleging how the warden was personally involved as to be a constitutional violation.

Prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care. *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). To assert an Eighth Amendment conditions-of-confinement claim, the inmate must come forward with alleged proof of both an objective and subjective component associated with the deficient conditions. *Id*. at 834. The objective component requires conditions sufficiently serious as to (1) deprive an inmate "of the minimal civilized measure of life's necessities" or (2) subject an inmate to "a substantial risk of serious harm." *Shannon v. Graves*, 257 F.3d 1164, 1168 (10th Cir. 2001) (quotation omitted). "The subjective component requires that a defendant prison official have a culpable state of mind, that he or she acts or fails to act with deliberate indifference to inmate health and safety." *Id*. To show deliberate indifference, a prisoner must adduce sufficient facts to show the defendant knew of and disregarded "an excessive risk to inmate health or safety." *Farmer*, 511 U.S. at 837. Under this standard, "the official must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id*. This is a high standard for imposing personal liability on prison officials. See *Self v. Crum*, 439 F.3d 1227, 1232 (10th Cir. 2006) (holding that *Farmer*'s "subjective component is

17

not satisfied[ ] absent an extraordinary degree of neglect"), *cert. denied*, 549 U.S.
856 (2006); *Giron v. Corr. Corp. of Am.*, 191 F.3d 1281, 1286 (10th Cir. 1999)
(recognizing that *Farmer*'s deliberate indifference standard sets out a "stringent
standard of fault"). The Supreme Court has acknowledged that the Constitution
"'does not mandate comfortable prisons,' and only those deprivations denying 'the
minimal civilized measure of life's necessities' are sufficiently grave to form the basis
of an Eighth Amendment violation." *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)
(internal citations omitted).

The plaintiff has not alleged wrongdoing that is objectively harmful
enough to establish a constitutional violation. There are no circumstances alleged to
show her transfer or her housing subjected her to a substantial risk of serious harm.
Nor has the plaintiff alleged that CA Davis knew of and disregarded an excessive risk
to the plaintiff's health or safety in making any of the decisions at issue here. The
complaint fails to allege Warden Geither's personal participation in and relevant
knowledge for any of these decisions. The plaintiff's Eighth Amendment claims are
subject to dismissal.

**First Amendment--Retaliation**

The plaintiff alleges UTM Dalton transferred her on October 22, 2020, in
retaliation for filing a grievance. She alleges JBC Marshall and GC Chavez denied her
opportunities for returning to private industry jobs in retaliation for filing grievances.
She alleges Major Hook retaliated by dismissing her from yard time, by confining her
to her room, and by warning her against having her family contact Russell Stover. She
alleges Warden Geither retaliated by denying her requests for shift changes and

private industry job opportunities. She, however, does not allege what protected activity under the First Amendment she was doing that triggered retaliatory actions by Major Hook or Warden Geither. All the plaintiff's allegations under this theory are deficient in lacking factual detail and for being conclusory.

"It is well-settled that prison officials may not retaliate against or harass an inmate because of the inmate's exercise of his right of access to the courts." *Requena*, 893 F.3d at 1211 (retaliation for filing a grievance) (internal quotation marks and citation omitted). The Tenth Circuit in *Requena* explained:

> "Government retaliation against a plaintiff for exercising his or her First Amendment rights may be shown by proving the following elements: (1) that the plaintiff was engaged in constitutionally protected activity; (2) that the defendant's actions caused the plaintiff to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity; and (3) that the defendant's adverse action was substantially motivated as a response to the plaintiff's exercise of constitutionally protected conduct." *Shero v. City of Grove*, 510 F.3d 1196, 1203 (10th Cir. 2007). The filing of prison grievances is constitutionally protected activity. *Gee*, 627 F.3d at 1189.

893 F.3d at 1211. The plaintiff also must present facts showing that "but for the retaliatory motive," the actions "would not have taken place." *Peterson v. Shanks*, 149 F.3d 1140, 1144 (10th Cir. 1998). "[A]n inmate claiming retaliation must allege specific facts showing retaliation because of the exercise of the prisoner's constitutional rights." *Id.* "[I]t is imperative that plaintiff's pleading be factual and not conclusory. Mere allegations of constitutional retaliation will not suffice." *Frazier v. Dubois*, 922 F.2d 560, 562 n.1 (10th Cir. 1990).

The plaintiff adequately alleges that she has filed grievances, but she does not sufficiently plead the other two elements of a retaliation claim. While transferring from one dorm to another, denying her request for a shift change at

work, losing one session of yard time, or allowing the inmate Phoenix to serve as property clerk may not be what the plaintiff wanted, it is not clear that she sustained an injury from these actions, let alone an injury serious enough to discourage a person from exercising her First Amendment right to access the courts. These so-called adverse actions seem to be the kind of ordinary and routine actions expected with confinement. A prisoner is "not inoculated from the normal conditions of confinement experienced by convicted felons serving time in prisons merely because he has engaged in protected activity." *Peterson v. Shanks*, 149 F.3d at 1144.

As for the third element, an "inmate claiming retaliation must allege specific facts showing retaliation because of the exercise of the prisoner's constitutional rights." *Fogle v. Pierson*, 435 F.3d 1252, 1264 (10th Cir. 2006) (quotations and citations omitted), *cert. denied*, 549 U.S. 1059 (2006). The plaintiff's allegations fail to identify which defendants were responsible for or participated in the different adverse actions and fail to show how they were substantially motivated because of the plaintiff's prior grievances. While termination from private industry jobs and the lost opportunity to seek private industry employment may well be sufficient chilling adverse actions, the plaintiff's allegations remain deficient in showing which named defendants participated in these adverse actions and how they were substantially motivated to retaliate because of the plaintiff's grievances. Her attachments and supplements contain many grievances, but the plaintiff does not allege a specific link between a certain grievance or grievances and any of these adverse actions. She does not allege anything about the timing or contents of the grievances as to sustain an inference of a retaliatory motive concerning the different

20

adverse decisions. The plaintiff's complaint offers no more than conclusory allegations of constitutional retaliation.

For example, there is no allegation that UTM Dalton or Deputy Warden Keith even knew the plaintiff had filed a grievance when he or they transferred her or removed her from the Koch Inc. job. The plaintiff fails to allege any connection between the grievance and the actions taken by Dalton and/or Keith. For the most part, the plaintiff's attached grievances show the adverse actions were not only taken in advance of any related grievance filings but were based on sound administrative reasons rather than questionable or inconsistent grounds indicative of a retaliatory intent. See *Strope v. Cummings*, 381 Fed. Appx. 878, 884 (10th Cir. 2010) (A plaintiff inmate has "the rigorous burden ... to show not only that a retaliatory motive may have played some role in his transfer but that such a motive was the strict but-for cause of his transfer."). Her allegation of "personal belief that [s]he is the victim of retaliation" is not enough. *Jones v. Greninger*, 188 F.3d 322, 325 (5th Cir. 1999) (citation omitted) ("Mere conclusory allegations of retaliation will not be enough to withstand" dismissal." (citation omitted)). Having failed to include sufficient specific facts, the plaintiff's retaliation claims are subject to dismissal.

As for the plaintiff's state law claims, the Court would decline to exercise supplemental jurisdiction over them should dismissal be necessary and appropriate. See 28 U.S.C. § 1367(c)(3) ("The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if ... the district court has dismissed all claims over which it has original jurisdiction."); *Baker v. Bd. of Regents*, 991 F.2d 628, 634 (10th Cir. 1993) (citing *United Mine Workers of Am. v. Gibbs*, 383

U.S. 715, 726 (1966)) ("Pendent jurisdiction is a doctrine of discretion, not of plaintiff's right."). "[A] district court should normally dismiss supplemental state law claims after all federal claims have been dismissed, particularly when the federal claims are dismissed before trial." *Foxfield Villa Assocs., LLC v. Robben*, 967 F.3d 1082, 1103 (10th Cir. 2020) (internal quotation marks and citation omitted), *cert. denied*, 141 S. Ct. 1385 (2021).

The plaintiff is required to show good cause why her complaint should not be dismissed for the reasons stated herein. She is also given the opportunity to file a complete and proper amended complaint upon court-approved forms that cures all the deficiencies discussed herein. This amended complaint is to be proper and complete alleging only properly joined claims and defendants, alleging sufficient facts to state a claim for a federal constitutional violation legally and factually viable in federal court, and alleging sufficient facts to show personal participation by each named defendant. If the plaintiff does not file her good-cause response and/or her amended complaint within the prescribed time, this matter will be decided based upon the current deficient complaint and may be dismissed without further notice.

IT IS THEREFORE ORDERED that the plaintiff is granted until May 13, 2022, in which to show good cause, in writing, to the Honorable Sam A. Crow, United States District Judge, why her complaint should not be dismissed for the reasons stated herein, and is also granted until May 13, 2022, in which to file a complete and proper amended complaint curing all the deficiencies discussed herein. The plaintiff's failure to file a good-cause response and/or her amended complaint by May 13, 2022,

will result in the court deciding this matter based upon the current deficient complaint and dismissing without further notice;

IT IS FURTHER ORDERED that the plaintiff's motion for appointment of counsel (ECF# 2) is denied, and the plaintiff's motion to proceed ifp (ECF# 5) remains pending for compliance with the requirements by May 2, 2022, as stated above.

Dated this 21st day of April, 2022, Topeka, Kansas.


s/Sam A. Crow
Sam A. Crow, U.S. District Senior Judge